(Court of Common Pleas, Ottawa County, O.)

### RICHARD MASON v. JOHN M. LEMMON.

---

*Growing grapes are emblements,* and are growing crops, although not sown annually. In judicial sales of real estate they are not embraced in the appraisement, and do not pass to the purchaser of the land at judicial sale.

---

KELLY, J.

This case was heard upon the ex parte motion of O. D. Townsend, to be allowed and paid out of a fund brought into this court by a receiver upon his final report and discharge, as a compensation for his services which he says contributed to the production of the fund. The facts in brief are these: W. D. Lindsley, some years ago, purchased some real estate on North Bass Island, in this county, of James S. Mason, giving his notes and mortgage for a part of the purchase-money. Lindsley afterwards sold the land, subject to the mortgage, to H. S. Kellogg, upon contract. Lindsley brought suit to foreclose this land contract, but died during the pendency of it. Lemmon and Phinney, his administrators de bonis non, compromised the suit, and sold Lindsley's interest in the land, and by an arrangement among the parties, Lemmon bid it off, to permit Kellogg, who had retained possession, to complete his purchase. While so in posses-

sion, Kellogg, with Lemmon's consent, made a verbal lease of the premises to O. D. Townsend, by which Townsend was to cultivate and care for the premises for the year 1894, for one-half of the crop, the land being a vineyard. Townsend beginning in March, continued to cultivate and care for the vineyard, till the appointment of the receiver herein on or about September 4, and before the maturity of the crop. The receiver was appointed in a suit begun May 31 by the assignee of the Mason notes and mortgage. Townsend was not made a party to this suit. A decree was entered, ordering a sale of the real estate, and it was sold accordingly, on September 29, to the plaintiff in this action—the price being insufficient to satisfy the mortgage debt.

Afterwards the crop of grapes was gathered and marketed by the receiver, assisted by Townsend, and the proceeds of this crop constitute the fund, out of which Townsend now asks compensation for his services in caring for and cultivating the crop. He claims that his services were reasonably worth $200, and admits the receiver had paid him $35, which would leave a balance due him, according to his claim, of $165.

The plaintiff in this action resists this demand, and claims the whole fund under his mortgage. If these facts entitle Townsend to a part of this fund, I suppose it can make no difference whether he claims it as compensation for his services or by virtue of an interest in the crop which produced it.

It would seem that a good portion of the services were rendered before the appointment of the receiver, and that he did not feel called upon to pay for them. It seems that Townsend's compensation, if it can be called such, was to be a share, to-wit: one-half of the crop. Is he entitled to have that or the proceeds of it, as against the assignee of the mortgage who purchased at foreclosure sale, the mortgage debt not being fully paid?

Following the leading case of Cassily v. Rhodes, 12 Ohio, 88, our Supreme Court has repeatedly held that emblements—growing crops of grain—annual crops, which have always been the subject of these decisions, do not pass to the purchaser at judicial sale.

A distinction may be found in the books between that kind of crops and those which are produced without annual planting or sowing, the former being regarded as chattels, and the latter as parcel of the realty. But our decisions do not seem to have proceeded upon that distinction.

In Cassily v. Rhodes, the court place their decision upon the grounds, first, in the protection the law owes to agriculture; and second, that to allow such crops to pass at a judicial sale would be to disregard our statute requiring property to be appraised before being offered for sale. It seems that a grape crop, though not sown annually, requires as much, probably more cultivation than any annual crop. The consideration to be drawn from 'the protection the law owes to agriculture" would seem to be as weighty in the case of such a crop as in the case of an annual crop. No man in his senses would expend the toil and care which are indispensable to bring such a crop to perfection, if he could be deprived of it by a sale on the premises before harvest; and this consideration is the very foundation of the rule protecting emblements, where the termination of the tenancy was uncertain. But the other ground of the court's decision, it seems to me, is equally applicable to a grape crop as to any annual crop. Says the Supreme Court in Houts v. Showalter, 10 Ohio St. 124, "as a general rule elsewhere, real estate is sold on execution without appraisement and for whatever it will bring; while in this state it must be first appraised and cannot be sold for less than two-thirds of its appraised value. The decision of Cassily v. Rhodes rests on the reason that where

lands are valued for judicial sales, the value of the growing crops is not included in the estimate, and that the debtor's rights, therefore, can be saved only by regarding the annual crops as personalty, requiring a separate levy. These reasons, while they can have no application where no appraisement is required and no minimum is fixed below which the sale shall not be made, are yet, it seems to us, just and conclusive under the pecularities of our own legislative policy."

"Where lands are valued for judicial sales, the growing crops are not included in the estimate; indeed generally, they cannot be. Under our system frequent advertisements and offers for sale, and occasionally re-valuations are necessary before a sale can be effected. When an appraisement is made, it cannot be foreseen when a sale will be effected. It is not for the interest of any party, nor for the public interest, that lands would thenceforth lie waste; there may have been no crops sown or planted, but when the sale comes to be made, there may be growing crops put into the ground in the meantime. If these passed by the sale, it would be unjust for the debtor, for they could not have been valued."

In every material respect this quotation is applicable to a grape crop as it could have been if the court had had that very crop in mind. Where the reasons are the same, the law ought to be the same, and the decision ought not to be influenced by a distinction largely artificial and arbitrary, between crops sown annually and those produced without such sowing.

I notice in the case of Albin v. Riegel, reported in the 40 Ohio St. 339, the court speak of this established rule, in regard to "growing crops." The court use the term "growing crops" without qualification, whether advisedly or not, I do not know.

I am of opinion that Townsend is entitled to such a part of this fund as added to the $35 already received by him, will make one-half of it.

The whole fund produced by the sale of the crop, as shown by the evidence is $244.85. One-half is $122.45. Deducting $35, leaves $87.42 yet to be paid to Townsend. An order of distribution may be drawn accordingly.

(Affirmed by circuit court July 9, 1895.)